IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SONJA C. HODGSON, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-529-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Sonja Hodgson filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. She applied for SSI benefits and disability insurance benefits in March 2005, alleging disability commencing October 15, 2004. (Tr. 16, 58). After her applications were denied initially and on reconsideration, Hodgson requested a hearing before an administrative law judge (the "ALJ"). ALJ J. Frederick Gatzke held a hearing on

November 29, 2006, which Hodgson attended with her attorney. (Tr. 223). On February 23, 2007, the ALJ issued an unfavorable decision in which he found that Hodgson was not disabled for purposes of disability insurance or SSI benefits because she retained the ability to perform a modified range of sedentary work. (Tr. 16-22). The Appeals Council denied Hodgson's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or medically equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must

prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

Hodgson alleges that the Commissioner's decision should be reversed and remanded because:

1. She has an impairment or combination of impairments of listing-level severity; and
2. The ALJ's assessment of her residual functional capacity is inconsistent with the medical opinions in the record.

D.   ADMINISTRATIVE RECORD[1]

Hodgson was born February 24, 1971, and completed high school in a special education program. (Tr. 58, 71, 170). She had worked as a cocktail waitress, and she had worked at a nursing home as a dietary aide. (Tr. 75, 234). In her application for benefits, Hodgson reported that she had difficulty reading and writing and had a learning disability that limited her ability to work. (Tr. 74). The Social Security field officer who interviewed Hodgson also noted that Hodgson had trouble remembering dates and times and appeared to be a little slow as she had difficulty understanding some of the interviewer's questions. (Tr. 83).

Hodgson was referred for a consultative psychological examination with Kristi Compton, Ph.D., on June 3, 2005. (Tr. 170). Hodgson drove herself to the evaluation, which was a distance of twenty-five miles. Hodgson reported that she felt like a burden at work because she had to ask a lot of questions. She indicated that she had problems with her comprehension and had difficulty maintaining employment. (Tr. 170). Hodgson had worked from 1989 to 2003 as a waitress at

---

[1] Hodgson complains of the ALJ's assessment of the severity of her mental impairment and its effect on her residual functional capacity assessment; therefore, her physical impairments require minimal attention.

Cowtown Country Restaurant, but quit because her daughter was starting school and she needed to be home in the evenings. She found a job working in the kitchen at a nursing home, but lost that job because of illness. (Tr. 170).

Compton administered intelligence and achievement tests to assess Hodgson's intellectual and academic abilities. Hodgson scored at a second-grade reading level, a second-grade mathematics level, and a first-grade spelling level. Hodgson's verbal IQ was 64, her performance IQ was 68, and her full-scale IQ was 63, which Compton identified as below-average and extremely low scores. (Tr. 171-72). Hodgson resided with her husband and her six-year-old daughter. She drove occasionally and reported no impairment in her ability to perform domestic chores. She stated that she cooked, cleaned, and did the grocery shopping. She interacted with her family on a regular basis and had frequent contact with her parents, had no problems getting along with others, and reported no problems with authority figures. Based on Hodgson's work history, Compton opined that Hodgson was capable of performing simple and concrete tasks, but it might take her longer to comprehend novel situations. (Tr. 172).

Compton also performed a mental status evaluation. Hodgson demonstrated concrete, but essentially logical and goal-directed thought processes. (Tr. 172). She exhibited deficits in her working memory and remote memory, and she had a limited knowledge of current events. She was able to perform very basic mathematical calculations. Her ability for abstract reasoning was limited, and Compton also noted impairment in Hodgson's appreciation of similarities and differences as illustrated in her inability to described how a bush and a tree, or an apple and an orange, were alike. Hodgson appeared to function in the below-average range of intelligence, but she had adequate

knowledge of acceptable social behavior. (Tr. 173). When asked what she would do if she found a stamped and addressed letter, she responded that she would mail it. When asked what she would do if there was a fire in a theater, she stated that she would help others to an exit before getting out herself. (Tr. 173).

Compton diagnosed borderline intellectual functioning. Compton explained that Hodgson met the criteria for this diagnosis based on her subaverage intellectual functioning and academic deficits, but also noted that Hodgson's functional adaptive abilities have remained intact as demonstrated by her ability to maintain employment, marry, raise a child, live independently, and drive a car. (Tr. 173). Compton assigned Hodgson a Global Assessment of Functioning (GAF) score of 65.[2] Compton also assessed a positive prognosis. Although Hodgson's academic and intellectual deficits would not improve, she had functioned at an adequate and effective capacity in the past and was expected to maintain this level of functioning in the future. Compton noted that Hodgson understand the meaning of filing for benefits, although Hodgson also stated that she was not capable of managing her own funds. (Tr. 174).

State agency consultant Robert White, Ph.D., opined that Hodgson's borderline intellectual functioning had resulted in mild restriction in her activities of daily living; mild difficulty maintaining social functioning; moderate difficulty maintaining concentration, persistence or pace; and no episodes of decompensation or deterioration. (Tr. 194 , 200). White also completed a mental

---

[2] A GAF score is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score of 65 reflects mild symptoms, but the individual is generally functioning pretty well. *Id.* at 34.

functional capacity assessment. He noted marked limitation in Hodgson's abilities to understand, remember, and carry out detailed instructions. He also found moderate limitation in her ability to maintain attention and concentration for extended periods and respond appropriately to changes in work setting. (Tr. 185-86). White concluded that Hodgson was able to understand, remember and carry out only simple instructions; make simple decisions; attend and concentrate for extended periods; interact appropriately with co-workers and supervisors; and respond appropriately to changes in a routine work setting. (Tr. 187).

Hodgson testified at the administrative hearing that she was thirty-five years old and last worked in 2004. She stopped working because she fainted at work, she dropped things, and she had difficulty walking. (Tr. 226). Hodgson was on medication to treat diabetes. (Tr. 227, 229). She testified that she had difficulty breathing and was easily exhausted. (Tr. 229). She also complained of tingling in her hands, legs, and lower back. (Tr. 230). Hodgson graduated high school, but testified that she was in special education the entire time she attended school and still had trouble reading and comprehending words. (Tr. 226, 228). Her mother had completed the Social Security forms for her. (Tr. 228).

Vocational expert Donna Humphries testified that Hodgson's previous job as a waitress was considered semiskilled and required light exertion, while her work assisting in the kitchen at the nursing home was unskilled work that required medium exertion. (Tr. 234). The ALJ then asked Humphries if there were any other jobs available for an individual of the same age, education and work experience as Hodgson who was limited to work at the sedentary level of exertion and simple one- and two-step jobs. Humphries testified that there were unskilled production and assembly type

positions, with 6,000 in Texas and 120,000 in the national economy; unskilled production helper or manual hand laborer positions, with 3,000 in Texas and 50,000 in the national economy; and unskilled inspecting positions, with 2,000 in Texas and 30,000 in the national economy. (Tr. 234). Humphries testified that these jobs could be performed by an individual who was functionally illiterate. (Tr. 234-35).

E.  ALJ DECISION

The ALJ found that Hodgson had not engaged in substantial gainful activity since October 15, 2004, and that her borderline intellectual functioning and diabetes were severe, but did not meet or equal the criteria of any listed impairment. (Tr. 21). The ALJ further found that Hodgson retained the ability to perform sedentary work and simple one- or two-step tasks on a sustained basis. He also acknowledged Hodgson's testimony that she was functionally illiterate. (Tr. 21). Relying on the vocational expert testimony, the ALJ found Hodgson was not able to perform her past relevant work, but was capable of performing a significant number of other jobs existing in the national economy. (Tr. 21). Accordingly, the ALJ concluded that Hodgson was not under a disability and was not entitled to disability insurance or SSI benefits. (Tr. 21-22).

F.  DISCUSSION

   1.  Listing-Level Impairment

Hodgson asserts that the ALJ's determination at Step Three that she has no impairment or combination of impairments meeting a listing is unsupported by substantial evidence and is a result of legal error. More specifically, she complains that the ALJ failed to explain why her borderline intelligence did not meet Listing 12.05C. Listing 12.05C provides the following criteria for

disability as a result of mental retardation:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Part 404, Subpart P, app. 1, § 12.05C. If a claimant's impairment is in the Listing of Impairments or is found to be equivalent to a listed impairment, this raises the presumption of disability that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

Fifth Circuit jurisprudence reflects a reluctance to impose "formalistic rules" regarding the contents of an administrative decision. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (declining to require that ALJ specify the evidence supporting a credibility finding and discuss the evidence that was rejected). However, the Fifth Circuit has recently clarified that the ALJ is required to discuss the evidence and state the reasons for an adverse determination at Step Three. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Summarily concluding that a claimant fails to meet or equal the criteria of an unspecified listing is insufficient because it does not permit meaningful judicial review. *Id*.

The ALJ acknowledged Hodgson's argument that her condition met Listing 12.05C and affirmed that he had considered the listings, but his discussion consists of only a conclusory

statement that he found that Hodgson did not meet the criteria of any listed impairment.[3] (Tr. 17). The ALJ's decision provides no insight into his reasoning. *Audler* was issued several months after the ALJ's determination, and thus the ALJ's culpability for this omission is minimal, but the deficiency is still one that impedes judicial review. *See Audler*, 501 F.3d at 448. Nonetheless, remand is not required unless substantial rights have been affected. *Id.*; *Mays v. Bowen*, 837 F.2d 1362, 1364 (1988).

The ALJ's failure to set out a basis for his decision at Step Three affects substantial rights when the claimant appears to have met his burden to demonstrate that he meets or equals a listing. *See Audler*, 501 F.3d at 449. Hodgson asserts that her condition appears to meet Listing 12.05C because objective testing yielded verbal, performance and full scale IQ scores below 70 and even the ALJ found that she has at least one other severe impairment, i.e., diabetes, that by definition imposes additional and significant work-related limits her ability to function. *Cf. Selders v. Sullivan*, 914 F.2d 614, 619-20 (5th Cir.1990)(finding insufficient evidence of both subaverage intelligence and a second significant physical or mental impairment). She also asserts that her condition manifested itself before age 22 because she was in a special education program in school.

The Commissioner contends that the record as a whole does not reflect that Hodgson has deficits in adaptive functioning; therefore, she does not satisfy all of the criteria necessary to meet Listing 12.05C. *See generally Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) (noting that impairment manifesting only some of the criteria, no matter how

---

[3] The ALJ also noted that no treating or examining source had mentioned findings equivalent in severity to any listed impairment, but Hodgson does not challenge the ALJ's findings on the issue of medical equivalency.

severely, does not qualify). The diagnostic description at the beginning of Listing 12.05 requires the presence of both subaverage intellectual functioning and deficits in adaptive functioning. Adaptive functions include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, personal grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00(C)(1). *See also Arce v. Barnhart*, 185 Fed. App'x 437, 438-439 (5th Cir. 2006).

Compton, who provided the only examining source opinion in the record, observed that Hodgson's functional adaptive abilities had remained intact despite her subaverage intellectual functioning and academic deficits. (Tr. 174). The state agency psychological consultant who assessed Hodgson's borderline intellectual functioning likewise did not find that her condition met or equaled a listed mental impairment. (Tr. 190). Hodgson stated during the consultative psychological evaluation that she was able to cook, clean, and shop for groceries, although she testified at the hearing that her husband did the housework. (Tr. 19, 233). Hodgson had a driver's license and could drive a car, but sometimes relied on her family for transportation. She also reported significant family relationships and attended church, movies, and parties, but she did become upset if she could not understand what people meant. (Tr. 113-16). Despite her low IQ scores and academic deficits, she maintained employment for well over a decade with the same employer. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir.1995)(noting that claimant was able to work for several years while suffering from impairments she now asserted were disabling). In addition, she indicated that she quit her waitress job because her work hours interfered with her ability to care for her daughter, and she lost her most recent job because of her physical impairments,

not as a result of her borderline intellectual functioning or other mental limitations. The court agrees with the Commissioner that Hodgson does not have the requisite deficits in adaptive functioning to satisfy Listing 12.05C.[4] *See Arce*, 185 Fed. App'x at 439 (finding substantial evidence that claimant, who was capable of housecleaning, using a computer, grooming, and getting along with others, but who required help cooking, paying bills, shopping, riding the bus and caring for her children, did not have deficits in adaptive functioning and therefore did not meet listing 12.05C).

The ALJ should have articulated specific reasons supporting his determination that Hodgson had no listing-level impairment. Nonetheless, Hodgson has not demonstrated that she suffered substantial prejudice as a result of any deficiency in the ALJ's discussion.

2. Mental Residual Functional Capacity

Hodgson asserts that the assessment of her residual functional capacity (RFC) is erroneous and not support by substantial evidence. RFC is what an individual can still do despite her limitations. SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id*.; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC is not the least an individual can do, but the most. SOCIAL SECURITY RULING 96-8p. The RFC assessment is a function-by-function

---

[4] The Commissioner also argues that a diagnosis of mental retardation is a threshold requirement of Listing 12.05. A diagnosis alone is never sufficient to satisfy the requirements of a given listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). And Listing 12.05, although all of its criteria must be satisfied, does not require a formal diagnosis of mental retardation. *See Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007). But the fact that Compton diagnosed Hodgson with borderline intellectual functioning, despite her IQ scores that were below the expected range for borderline intellectual functioning and within the range of mild mental retardation, is consistent with the Commissioner's position that Hodgson did not have the necessary deficits in adaptive functioning to satisfy all of the criteria for Listing 12.05C. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 42, 48 (4th ed. 1994)(DSM-IV)(noting that mental retardation would not be diagnosed for an IQ score below 70 without significant deficits in adaptive functioning).

assessment, with both exertional and nonexertional factors to be considered. *Id*. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id*. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but presumptions, speculation, and supposition do not constitute evidence. SOCIAL SECURITY RULING 86-8.

Hodgson complains that the ALJ gave inadequate attention to the opinions offered by the state agency psychologist who reviewed her claim at an earlier stage in the administrative proceedings. Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency consultants' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p. The ALJ, however, did not ignore the opinions. He addressed them, but indicated that he was not affording them significant probative weight because new and material evidence, including testimony, had been received after those assessments were made. (Tr. 18).

Moreover, Hodgson has not demonstrated that any alleged shortcomings in the ALJ's explanation prejudiced her. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. [Unit A] 1981)(per curiam)(requiring agency to follow its own procedures and setting aside agency action if prejudice resulted from a violation of internal procedures). Hodgson correctly notes that state agency psychologist Robert White, Ph.D., found marked restriction in her ability to handle detailed

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 13 OF 18

instructions and moderate restrictions in her ability to maintain attention and concentration and her ability to respond appropriately to changes in work-setting. (Tr. 185-86). But White also provided a narrative assessment in which he found that Hodgson was capable of understanding, remembering and carrying out simple instructions; making simple decisions; attending and concentrating for extended periods; interacting appropriately with co-workers and supervisors; and responding appropriately to changes in work setting. (Tr. 187). White's assessment presents no material conflict with the ALJ's assessment of Hodgson's RFC.

Hodgson also argues that the ALJ prepared a mental RFC assessment that does not adequately accommodate the ALJ's determination that she has a moderate impairment in concentration, persistence, or pace. The Social Security disability regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Once an impairment is found, the adjudicator will rate the degree of functional limitation resulting from the impairment. *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the adjudicator determines whether the impairment is severe or not severe given the degree of functional loss in the four given areas.[5] *Id*. §§ 404.1520a(d), 416.920a(d). If

---

[5] Assessment of the first three areas requires use of a five-point scale: None, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.920a(c)(4) 416.920a(c)(4). Assessment of the fourth area requires use of a four-point scale: None, one or two, three, four or more. 20 C.F.R. §§ 404.920a(c)(4) 416.920a(c)(4).

the impairment is severe, the adjudicator determines if the impairment meets or is equivalent in severity to a listed impairment. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If the claimant has a severe impairment that neither meets nor medically equals a listed impairment, the adjudicator proceeds to an assessment of the claimant's residual functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). Consistent with the regulations, the ALJ assessed the impact of Hodgson's borderline intellectual capacity on her performance in the full broad areas of functioning. The ALJ found no restrictions in Hodgson's activities of daily living and social functioning and no episodes of decompensation, but he found moderate impairment in Hodgson's ability to maintain concentration, persistence or pace. (Tr. 19). Proceeding to the issue of Hodgson's mental RFC, the ALJ found Hodgson was capable of sustained work activity, consisting of a forty-hour workweek for an indefinite period of time, at a sedentary level of exertion with one- or two-step tasks. (Tr. 19). Hodgson asserts that this assessment does not incorporate a moderate degree of impairment in concentration, persistence, or pace, particularly with respect to her ability to maintain a work pace.

The category of concentration, persistence or pace refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00C(3). The consulting psychologist opined that Hodgson could perform simple and concrete tasks in a timely and appropriate manner, though it would take her longer to comprehend novel situations. (Tr. 172). The state agency psychologist, who had the benefit of the consulting psychologist's report, also found that Hodgson had a moderate impairment in concentration, persistence or pace, but was capable of simple tasks and extended periods of attention and concentration, without significant

limitation in her ability to complete a normal workday and workweek or perform at a consistent pace. (Tr. 185-87, 200, 202). Hodgson has not demonstrated that a restriction to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir.2001); *Adams v. Astrue*, 2008 WL 2812835, *4 (W.D. La. Jun 30, 2008). *But see Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir.2004)(finding that claimant's impairment in concentration, persistence, or pace was not accommodated by limitation to simple tasks because it did not account for deficiencies in pace). The ALJ's assessment of Hodgson's RFC for work-related mental activities is supported by substantial evidence and consistent with the relevant legal standards.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 21, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 16 OF 18

findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 21, 2008 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JULY 30, 2008.

   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE